# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JIMMIE DALE MILLER, # K-79113, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-cv-859-NJR |
| | ) | |
| BRUCE RAUNER, | ) | |
| JOHN BALDWIN, | ) | |
| SHERRY BENTON, | ) | |
| JACKIE LASHBROOK, | ) | |
| KAREN JAIMET, | ) | |
| LARUE LOVE, | ) | |
| MR. THOMPSON, | ) | |
| MR. HOCH, | ) | |
| RONDA McWILLIAMS, | ) | |
| A. HILL, | ) | |
| MR. SAMOLINSKI, | ) | |
| MS. LOOS, | ) | |
| D. FLATT, | ) | |
| JOHN HOWARD ASSOCIATION, | ) | |
| WEXFORD HEALTH SOURCE, INC., | ) | |
| LOUIS SHICKER, | ) | |
| STEVE MEEKS, | ) | |
| A. BUTALID, | ) | |
| DR. RAO, | ) | |
| MS. ROSE, | ) | |
| MR. SMITH, | ) | |
| LaDONNA LONG, | ) | |
| A. RECTOR, | ) | |
| LARA LACRONE, | ) | |
| CHRISTINA BROWN, | ) | |
| JOHN DOE #1 (Wexford Traveling Medical | ) | |
| Director), | ) | |
| JOHN DOE #2 (Mailroom Supervisor), | ) | |
| and JANE DOE (Med Tech), | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, and inmate of the Illinois Department of Corrections ("IDOC") currently

incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to several serious medical conditions and failed to maintain a functional grievance system. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract

recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Plaintiff has been diagnosed with Type II diabetes and Hepatitis-C. (Doc. 1, p. 7). He has several mental health conditions (bipolar disorder, acute depression, anxiety, and insomnia) for which he has been prescribed medications. (Doc. 1, p. 12). His vision has deteriorated and he has a need for dental care. *Id.*

On September 1, 2016, Plaintiff was transferred from Stateville Correctional Center ("Stateville") to Pinckneyville. (Doc. 1, p. 7). On his arrival, Plaintiff informed a nurse of his diabetes and Hepatitis-C and his need for treatment of these conditions. As well, he was in need of new prescription glasses for his worsening vision, had a persistent ache in his left eye, and had chronic pain in his kidney area.

On August 16, 2016 (while Plaintiff was still at Stateville), he had written a 3-page letter to IDOC Medical Director Shicker, the John Howard Association, and Wexford Health Source, Inc. ("Wexford"), complaining about his inability to secure treatment for his ailments, and seeking their help in obtaining medical care. (Doc. 1, p. 8; Doc. 1-1,[1] pp. 2-4). He never got a response.

At an unspecified time after Plaintiff's arrival at Pinckneyville, Dr. Scott (who is not

---

[1] Plaintiff submitted over 170 pages of exhibits with his Complaint, including this letter and other letters, complaints, and grievances referenced below. (Doc. 1-1; Doc. 1-2).

named as a Defendant in the Complaint) was made aware of Plaintiff's medical concerns and ordered x-rays and lab work regarding his kidney pain. (Doc. 1, p. 8). These tests revealed nothing abnormal, however, and Dr. Scott did nothing else to investigate the cause of the pain. Dr. Scott left his position at Pinckneyville, and several months later, Plaintiff saw Dr. Butalid. (Doc. 1, p. 13). Dr. Butalid was unable to explain to Plaintiff the meaning of his fibrosis level of ".8" regarding the Hepatitis-C, but told Plaintiff this would be monitored. Unfortunately, however, Plaintiff was not called back to see a doctor about his Hepatitis-C or diabetes in the 6 months that followed that encounter. (Doc. 1, p. 13).

Sometime in September or October 2016, Plaintiff was seen by Dr. Rao regarding his mental health issues. (Doc. 1, p. 14). Dr. Rao determined that Plaintiff "didn't look crazy and should not be on the psych meds." *Id.* He discontinued Plaintiff's medications for anxiety and bipolar disorder; those medications had also helped Plaintiff with his "anger issues." *Id.* During this time without his medications, Plaintiff had trouble sleeping and increased mood problems, and started to get into fights. As a result of the fights while he was unmedicated, Plaintiff spent close to half his time at Pinckneyville in solitary confinement. He asked Rose and Smith (mental health specialists) to help him with a doctor referral so he could be put back on his medications, but they took no action. (Doc. 1, pp. 14-15). Finally, in April 2017, Plaintiff saw a psychiatric doctor (Dr. Munoz), who put him back on medication (Abilify).

On October 6, 2016, Plaintiff was back at Stateville temporarily on a court writ, and filed a grievance to IDOC Director Baldwin and Benton (of the IDOC Administrative Review Board) against Pinckneyville over the lack of medical treatment. (Doc. 1, p. 9; Doc. 1-1, p. 6).

On October 31, 2016, Plaintiff was sent to segregation after a fight with his cellmate, and his eyeglasses were left behind in his cell. (Doc. 1, p. 9). While in the health care unit, Plaintiff

told Warden Lashbrook and Med Tech Long about his need to have the glasses in order to see and read; they assured him the glasses would be retrieved. Plaintiff never got the glasses back, however, and he has been without them since October 31, 2016. (Doc. 1, pp. 9, 13). Plaintiff has not seen an eye doctor since he was taken into custody; he claims that Pinckneyville has not had an eye doctor for more than a year. (Doc. 1, pp. 13, 20). He never obtained replacement glasses.

On November 17, 2016, Plaintiff filed "yet another" grievance against Rose (mental health specialist), Dr. Rao (psych doctor), and others regarding the October 31 incident that landed him in segregation. (Doc. 1, p. 9; Doc. 1-1, pp. 9-18). Most of the grievance focused on the problems Plaintiff had with his cellmate and took issue with how the disciplinary matter was handled. Plaintiff laid part of the blame for the incident on Dr. Rao's action of taking Plaintiff off his psychiatric medications, and he asked to be put back on those prescriptions. (Doc. 1-1 pp. 16, 18).

On January 17-19, 2017, Plaintiff wrote to Counselor McWilliams regarding grievances/requests he had submitted earlier seeking help to get new eyeglasses, among other issues. Plaintiff's earlier grievances had been lost or misplaced. (Doc. 1, p. 10; Doc. 1-1, pp. 34-43).

In January 2017, Plaintiff sent a complaint exceeding 50 pages in length to Governor Rauner, IDOC Director Baldwin, Wexford, IDOC Medical Director Shicker, the John Howard Association, and Wardens Jaimet and Love (Doc. 1-1, pp. 70-123), covering many "system wide violation[s]" including inadequate medical care. (Doc. 1, p. 11).

On February 2, 2017, Plaintiff filed a grievance against Dr. Scott, McWilliams, Rauner, Wexford, Dr. Shicker, and the John Howard Association. In it, he complained that he had not been treated for Hepatitis-C or his kidney pain, needed a diabetic diet, and needed referrals to an

eye doctor and to mental health. (Doc. 1, p. 10; Doc. 1-1, pp. 45-50). He filed another grievance on these issues on May 7, 2017. (Doc. 1-1, pp. 51-56).

On June 18, 2017, Plaintiff wrote to Counselor Flatt (Doc. 1-1, pp. 60-61) in an attempt to get his medical and other grievances addressed. (Doc. 1, p. 10). On June 24, 2017, Plaintiff wrote a lengthy complaint to Wardens Jaimet, Love, and Thompson, Meeks (IDOC Health Service Chief), Lacrone (Nursing Director), John Doe #1 (Wexford Traveling Medical Director), and Brown (Health Care Administrator) (Doc. 1-2, pp. 1-27), regarding his inadequate medical care and systemic problems in the prison. (Doc. 1, p. 11).

Through these communications, as well as in-person discussions with some Defendants, Plaintiff claims to have brought his many medical concerns to the attention of all the medical personnel he lists among the Defendants, with the exception that he told Med Tech Long only about his eyeglasses. (Doc. 1, pp. 12-13; 26-27).

Plaintiff asserts that his First Amendment right to seek redress for his grievances has been denied by the failure of Pinckneyville officials and other corrections officials to comply with their own grievance procedures, and by their failure to address his complaints or allow him to exhaust his administrative remedies. (Doc. 1, pp. 15-16). He names Baldwin, Benton, Lashbrook, Jaimet, Love, Thompson, Hoch, McWilliams, Hill, Samolinski, Loos, Flatt, John Doe #2 Mailroom Supervisor, and the John Howard Association in connection with this claim. The individual Defendants discouraged him from filing grievances, by, for example, telling him not to file them because the facility does not respond to grievances (Hoch); refusing to accept grievances (McWilliams); and ignoring grievances (Hill, Lashbrook, Jaimet, Love, Thompson, Samolinski, Loos, Flatt, and John Doe #2). (Doc. 1, pp. 16-17).

Plaintiff further complains that on June 13, 2017, he was told by Med Tech Jane Doe that

he was required to go through sick call three times, paying a $5.00 co-payment each time, before he would be referred to a doctor. (Doc. 1, pp. 17-18). Plaintiff objects to this because his illnesses are chronic. Some of his symptoms (vision, pain) are getting worse, and he risks deterioration of his diabetes and Hepatitis-C if those conditions remain untreated. (Doc. 1, p. 18).

Plaintiff seeks declaratory and injunctive relief, requiring Defendants to treat his medical conditions and fix the grievance system. (Doc. 1, pp. 18-19; 28-31). He also seeks money damages. (Doc. 1, pp. 30-31).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Eighth Amendment claim for deliberate indifference to medical needs against Dr. Butalid, for failing to treat or monitor Plaintiff's Hepatitis-C and diabetes;

**Count 2:** Eighth Amendment claim for deliberate indifference to medical needs against Dr. Rao, for discontinuing Plaintiff's prescribed psychiatric medications;

**Count 3:** Eighth Amendment claim for deliberate indifference to medical needs against Rose and Smith, for failing to act on Plaintiff's requests for referrals to reassess his need for psychiatric medication;

**Count 4:** Eighth Amendment claim for deliberate indifference to medical needs against Lashbrook and Long, for failing to retrieve Plaintiff's eyeglasses on October 31, 2016;

**Count 5:**     Eighth Amendment claim for deliberate indifference to medical needs against McWilliams and Flatt, for failing to assist Plaintiff with a referral to see an eye doctor to get replacement glasses, or to be evaluated for treatment of his diabetes, Hepatitis-C, and other medical needs;

**Count 6:**     Eighth Amendment claim for deliberate indifference to medical needs against Med Tech Jane Doe, for requiring Plaintiff to make a $5.00 co-payment for 3 visits before he could be referred to a doctor;

**Count 7:**     Eighth Amendment claim for deliberate indifference to medical needs against medical providers Rector, Lacrone, Brown, Shicker, Meeks, Wexford Health Source, Inc., and John Doe #1 (Wexford Traveling Medical Director), for failing to take action in response to Plaintiff's requests and letters/grievances complaining about the denial of medical care;

**Count 8:**     Eighth Amendment claim for deliberate indifference to medical needs against wardens Lashbrook, Jaimet, Love, and Thompson, for taking no action in response to Plaintiff's letters/grievances complaining about the denial of medical care;

**Count 9:**     Eighth Amendment claim for deliberate indifference to medical needs against Rauner, Baldwin, Benton, and the John Howard Association, for taking no action in response to Plaintiff's letters/grievances complaining about the denial of medical care;

**Count 10:**    First Amendment and Fourteenth Amendment due process claims against Baldwin, Benton, Lashbrook, Jaimet, Love, Thompson, Hoch, McWilliams, Hill, Samolinski, Loos, Flatt, John Doe #2 Mailroom Supervisor, and the John Howard Association, for the mishandling and/or failure to respond to Plaintiff's grievances, and failure to maintain an effective system for accepting and processing grievances.

As explained below, Counts 1, 2, 3, 4, 5, 7, and 8 shall proceed against some of the Defendants. Counts 6, 9, and 10 fail to state a claim upon which relief may be granted, however, and shall be dismissed.

## Deliberate Indifference to Serious Medical Needs

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). An ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain also satisfies the objective requirement. *Gutierrez*, 111 F.3d at 1373. Further, the Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983).

As to the subjective component, "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth

Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff has been diagnosed with several serious medical conditions: diabetes, Hepatitis-C, bipolar disorder, depression, anxiety, and insomnia. He also suffered from long-term pain in his kidney area and eyes and needs corrective lenses to see. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether Plaintiff's prison medical providers and the other Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

### Count 1 – Dr. Butalid

Dr. Butalid ordered some medical tests to assess Plaintiff's Hepatitis-C condition. The fact that Plaintiff did not get a satisfactory explanation of his test results does not establish deliberate indifference. Unfortunately, however, Dr. Butalid's plan to monitor Plaintiff's Hepatitis-C does not appear to have been carried out; Plaintiff claims that at least six months elapsed without his being called to see a doctor about either the Hepatitis-C or his diabetes. A lack of follow-up for these serious chronic conditions may indicate deliberate indifference on the part of Dr. Butalid. Therefore, **Count 1** shall receive further consideration.

### Count 2 – Dr. Rao

Dr. Rao discontinued several psychiatric medications that Plaintiff had been taking for some time. As a result, Plaintiff went without those prescriptions for approximately six months. During that time, Plaintiff experienced problems sleeping, his mood was "sporadic," and he had difficulty coping with daily life and managing his anger. (Doc. 1, p. 14). Plaintiff's behavior landed him in disciplinary segregation. Another doctor ultimately put Plaintiff back on prescription medication for his mental health issues in April 2017.

A disagreement between medical professionals as to what treatment is appropriate for a medical or mental health condition will not support a claim for deliberate indifference. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (courts will not take sides in disagreements with medical personnel's judgments or techniques). When an inmate's symptoms worsen as the result of a doctor's decision to withhold medications that had previously been prescribed, however, those circumstances may suggest deliberate indifference to the prisoner's need for medication to treat his condition. For this reason, the deliberate indifference claim against Dr. Rao in **Count 2** may proceed for further consideration.

### Count 3 – Rose & Smith

During the period after Dr. Rao terminated Plaintiff's medications, he spoke with Rose and Smith (Mental Health Specialists) and requested them to refer him to see a doctor so that he could get back on his psychiatric prescriptions. The Complaint indicates that Plaintiff made this request in person more than once to each of these Defendants, as well as in writing to Rose. (Doc. 1, pp. 14-15). Rose promised to make a doctor referral, however, neither Rose nor Smith followed through to do so, and as a result, Plaintiff was not put back on medication until his April 2017 visit with Dr. Munoz. Plaintiff experienced problematic symptoms, described above under Count 3, during the time he went without psychiatric prescriptions.

The delay in Plaintiff's treatment attributable to Rose and Smith may support a claim against them for deliberate indifference to Plaintiff's mental health conditions. **Count 3** shall also proceed for further review.

### Count 4 – Lashbrook & Long

This claim arises from Lashbrook's and Long's encounter with Plaintiff after he had a fight with his cellmate on October 31, 2016, and was removed from his cell without his

eyeglasses. According to Plaintiff, he was in the health care unit following the fight (apparently before he was placed in segregation), and it was there that he spoke with Med Tech Long and Warden Lashbrook. He explained that he could not see or read without the glasses, and he needed somebody to get them from his cell. Long and Lashbrook told Plaintiff this would be done, but he never got those glasses. Making matters worse, in the ensuing months, Plaintiff was unable to get any prison official to schedule him to see an eye doctor so that he could obtain a replacement pair.

At this stage, Plaintiff's deliberate indifference claim against Lashbrook and Long survives § 1915A review, and **Count 4** may also proceed.

### Count 5 – McWilliams & Flatt

McWilliams and Flatt are both counselors at Pinckneyville, and they were responsible for handling inmate grievances and complaints about access to medical care. During November and December 2016, Plaintiff submitted grievances/requests to McWilliams seeking help to get his eyeglasses replaced. He followed up those requests with a January 2017 letter, because his earlier grievances had disappeared. (Doc. 1-1, pp. 34-43). In February 2017, Plaintiff filed a grievance naming McWilliams, among other Defendants, complaining that his many medical complaints had not been addressed. (Doc. 1-1, pp. 45-50). In June 2017, Plaintiff wrote to Flatt to inquire about the status of a number of grievances, including a May 7, 2017, grievance over medical treatment that was personally delivered to Flatt. (Doc. 1-1, pp. 60-61).

In order to be held individually liable in a civil rights case, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). A defendant's role in responding to prisoner grievances ordinarily does not amount to "personal involvement" in the constitutional

deprivation that gave rise to the grievance. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."). A prisoner may be able to proceed with a deliberate indifference claim against a grievance official, however, if that person was made aware that the prisoner's serious medical condition was not being treated by prison medical providers, yet took no action to assist in obtaining care for the prisoner. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences").

Here, Plaintiff's letters and grievances raised a number of unrelated issues along with his complaints about the lack of medical treatment for his conditions. The multiplicity of issues and the length of many of Plaintiff's writings make the Court reluctant to characterize them as "coherent." Nonetheless, Plaintiff included details regarding his chronic and ongoing serious medical needs and consistently pointed out that his requests for treatment were being ignored. As to McWilliams, it appears that Plaintiff made many attempts to enlist her help with obtaining replacement eyeglasses, as well as his other medical needs, with no response. The Complaint indicates that Flatt also received detailed grievances from Plaintiff regarding his unmet medical needs. It remains to be seen whether these communications from Plaintiff to his counselors sufficiently put them on notice of the lack of medical treatment so as to support a claim of deliberate indifference. At this early stage, the deliberate indifference claims against McWilliams and Flatt survive dismissal and shall proceed under **Count 5.**

## Dismissal of Count 6 – Medical Co-Payment

An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption, such as a waiver of the co-payment for an inmate with a chronic condition, should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution").

Med Tech Jane Doe's notification to Plaintiff that he must go through three sick call visits before he would be referred to a doctor does not amount to a constitutional violation. Notably, if an inmate "opt[s] to refuse treatment rather than part with his money," he cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making." *Poole*, 703 F.3d at 1027.

For these reasons, the civil rights claim in **Count 6** shall be dismissed with prejudice. If Plaintiff should wish to bring a challenge to the assessment of a co-payment, he must do so in state court.

## Count 7 – Medical Administrators & Wexford

Count 7 encompasses Plaintiff's deliberate indifference claims against Wexford and several of its medical staff at Pinckneyville (Nurse Practitioner Rector, Director of Nursing Lacrone, Health Care Administrator Brown), Wexford's "Travelling Medical Director" (John Doe #1), and IDOC medical administrators (Dr. Meeks, Dr. Shicker). With the exception of Rector, there is no indication in the Complaint that Plaintiff ever met with or was examined by any of the individuals above in the course of his efforts to obtain medical care. He alleges that he personally told Rector about his need for treatment for Hepatitis-C and vaccines for Hepatitis A

and B. (Doc. 1, p. 13). The deliberate indifference claim in **Count 7** may therefore proceed against Rector.

As to the other individuals in this count, their knowledge of Plaintiff's medical conditions, if any, came from the written complaints, letters, or grievances submitted by Plaintiff in his attempts to seek treatment.

Plaintiff wrote to Wexford and Shicker as far back as August 2016, before he was transferred to Pinckneyville, complaining about the lack of medical treatment at his former prison despite sick call requests and grievances he had submitted there. (Doc. 1-1, pp. 2-4).

The next communication Plaintiff mentions having sent to Wexford and Shicker was his over-50-page complaint mailed in January 2017.[2] (Doc. 1-1, pp. 70-123). Plaintiff outlined at length what he believed to be systemic problems with the prison health care system, and prison officials' and the John Howard Association's lack of action to address these problems. He also stated that he had not received his diabetes medication for eight months (Doc. 1-1, p. 76), and requested immediate treatment for his Hepatitis-C, an eye exam and replacement of his glasses, a special diet for his diabetes, and an MRI to diagnose his kidney pain. (Doc. 1-1, pp. 79-80). He included a detailed chronology of his encounters with medical staff and his attempts to get treatment, as well as other non-medical issues. (Doc. 1-1, pp. 83-123).

Plaintiff filed grievances at Pinckneyville on February 2 and May 7, 2017, in which he included Shicker and Wexford among the parties who had failed to address his medical needs. (Doc. 1-1, pp. 45-56).

On June 24, 2017, Plaintiff wrote another complaint over his inability to get treatment for his medical issues. (Doc. 1-2, pp. 1-27). This communication was directed to Thompson, Meeks,

---

[2] This complaint was also addressed to Governor Rauner, Director Baldwin, the John Howard Association, and Wardens Jaimet and Love. (Doc. 1-1, p. 70).

Lacrone, Brown, and the John Doe #1 Wexford "Traveling" Medical Director.[3] The letter begins by taking issue with the $5.00 co-payment policy and arguing that it runs afoul of Illinois statutes. Plaintiff then addresses the requirement for prisoners to have access to bathing facilities, a law library, out-of-cell recreation, and a nutritious diet. (Doc. 1-2, pp. 4-6). He next outlines his medical conditions and his attempts to seek care. (Doc. 1-2, pp. 7-14). He describes the treatment that he considers adequate care for diabetes, and concludes with another request for medical treatment. (Doc. 1-2, pp. 15-21).

In order to sustain a claim against any of the individual Defendants in this count (Shicker, Meeks, Rector, Lacrone, Brown, or John Doe #1-Wexford's "Traveling" Medical Director), Plaintiff must show that the individual was informed of his serious medical conditions and of his contention that prison medical providers were not providing him with treatment for these conditions. If a Defendant had such knowledge, but failed to take any action to remedy the alleged failure to address Plaintiff's medical issues, that Defendant may have been deliberately indifferent to Plaintiff's medical needs. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015); *Vance v. Peters*, 97 F.3d 993 (7th Cir. 1995) ("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.").

Of the above individuals, Dr. Shicker was the intended recipient of two of Plaintiff's letters (August 2016 and January 2017), and was named in his February 2 and May 7, 2017, grievances. The contents of the August 2016 and January 2017 letters/complaints were sufficient to place Shicker on notice of Plaintiff's serious medical issues and his inability to get treatment. Months elapsed after Plaintiff's communications were sent, with no response from Shicker. On

---

[3] This communication was also addressed to Wardens Jaimet and Love. (Doc. 1-2, p. 2).

this basis, the deliberate indifference claim in **Count 7** against Dr. Shicker shall be allowed to proceed at this early stage.

Plaintiff directed only one of the letters mentioned in his pleading to Meeks, Lacrone, Brown, and John Doe #1-Wexford's "Traveling" Medical Director. This was the 27-page "Notarized Medical Complaint" dated June 24, 2017, and notarized on June 29, 2017. (Doc. 1-2, pp. 1-27). Plaintiff filed this action approximately six weeks after mailing the document, indicating that none of these individuals had responded to his communication.

Further factual development may reveal that some or all of these individuals did not receive Plaintiff's letter, which would defeat a deliberate indifference claim. At this stage, however, Plaintiff will be allowed to proceed with his claim in **Count 7** against Lacrone, Brown, and Meeks.

The John Doe #1-Wexford Traveling Medical Director shall be dismissed from the action without prejudice at this time. Without a name for this individual, or even any indication that such an individual exists within the Wexford administration or that Plaintiff's letter was delivered to him or her, the foundation for a deliberate indifference claim against this hypothetical person is too flimsy. The letter of June 24, 2017, may still be considered in the context of Plaintiff's claim against Wexford as a corporation.

Defendant Wexford Health Source, Inc., ("Wexford") is a corporation that employs the prison medical provider Defendants (Scott, Butalid, Lacrone, and others) and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002)

(private corporation is treated as though it were a municipal entity in a § 1983 action).

Here, Plaintiff has not specifically alleged that an individual Defendant either acted or failed to act as a result of an official policy espoused by Defendant Wexford; instead, he maintains that Wexford's system of providing medical care at the prison, which amounts to a corporate policy/practice, is so inadequate that he has been denied necessary medical care. For instance, Plaintiff was unable to secure a referral to an eye doctor to get replacement eyeglasses for more than eight months, and he was told by medical staff that there was no eye doctor available at the prison. Similarly, Plaintiff's many verbal and written requests for medical attention for his serious and chronic ailments failed to elicit a response. Even Plaintiff's lengthy letters to Wexford in August 2016, January 2017, and June 2017 produced no inquiry or answer from a Wexford representative or from medical staff at the prison. For these reasons, Plaintiff's deliberate indifference claim against Wexford shall be allowed to proceed.

To summarize, Plaintiff's deliberate indifference claims in **Count 7** may proceed against Rector, Shicker, Lacrone, Brown, Meeks, and Wexford. Defendant John Doe #1-Wexford Traveling Medical Director shall be dismissed without prejudice.

### Count 8 – Wardens

Wardens Lashbrook, Jaimet, Love, and Thompson are not alleged to have been medical providers, but instead are (or were) in administrative positions at Pinckneyville. As discussed under Count 4, Plaintiff personally advised Lashbrook of his need for his eyeglasses in October 2016, and that deliberate indifference claim shall go forward. Plaintiff also seeks to hold Lashbrook and the other wardens liable for deliberate indifference to his need for treatment for diabetes, Hepatitis-C, mental health conditions, and pain, that went untreated for extended periods of time.

Plaintiff's lengthy letter of January 2017, outlined in Count 7, was addressed to Jaimet and Love, as well as to several other Defendants. (Doc. 1-1, pp. 70-123). Plaintiff's June 2017 complaint was also sent to Jaimet and Love, and Plaintiff included Thompson among the recipients as well. (Doc. 1-2, pp. 1-27). As with the Defendants in Count 7, these communications should have informed Jaimet, Love, and Thompson that Plaintiff had serious medical issues that were allegedly not being addressed by the prison medical staff at Pinckneyville. These wardens' apparent lack of inquiry or action regarding Plaintiff's complaints could amount to deliberate indifference, if they knew about Plaintiff's medical conditions yet "turned a blind eye" to the medical providers' failure to treat him. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *see also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). For this reason, **Count 8** shall be allowed to proceed against Jaimet, Love, and Thompson.

Lashbrook was not among the recipients of either of Plaintiff's letters outlining his inability to obtain medical treatment. While Plaintiff states that he filed grievances over the lack of response to his requests for medical care, he also complains that the grievance system was ineffective, and this suggests that Lashbrook may not have received Plaintiff's grievances. He does not describe any personal encounters with her where he brought up his medical issues, other than the incident regarding his glasses. Thus, the Complaint does not indicate that Lashbrook was made aware of Plaintiff's other medical problems, and for this reason, it does not support a deliberate indifference claim against her. The claim in **Count 8** against Lashbrook, therefore, shall be dismissed without prejudice.

### Dismissal of Count 9 – Administrators & John Howard Association

None of the officials named in this count serve at Pinckneyville. Baldwin is the statewide Director of the IDOC. Benton is with the IDOC's Administrative Review Board, which handles

appeals of inmate grievances. Rauner is the Governor of Illinois.

Plaintiff sent one communication (his January 2017 letter of complaint) to Rauner and Baldwin. Lengthy and detailed as it was, this letter does not serve to impose liability on an official such as the Governor or a state agency director for the problems of one individual prison inmate. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). In *Burks*, Judge Easterbrook wrote:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. . . . Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595. As in the *Burks* case, Plaintiff seeks to hold top state officials liable for the misdeeds of other subordinate staff, based on a single letter of complaint. This is not the law. Furthermore, these officials cannot be held liable based on their position as supervisors, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Under the rationale in *Burks* and *Sanville*, the claims against Rauner and Baldwin in **Count 9** shall be dismissed without prejudice.

As to Benton, Plaintiff states that back on October 6, 2016 (while he was on a temporary writ to Stateville), he filed a 1-page grievance directed to Benton and Baldwin, complaining that during the month he had been at Pinckneyville, he had not received treatment for his Hepatitis-C, and wanted vaccinations for Hepatitis A and B. (Doc. 1, p. 9; Doc. 1-1, p. 5-7). Benton responded that Plaintiff should contact the health care unit regarding his needs, and noted that he had not provided any response from the facility, which was required for his grievance to be

processed. Plaintiff apparently did not send his other letters of complaint to Benton. Plaintiff's exhibits indicate that Benton responded to some of his appeals from grievances that were denied at the institutional level, but it is unclear from the Complaint how much information (if any) Benton might have received regarding Plaintiff's allegations that he continued to be denied medical care.

As a rule, an official who conducts a high-level review of prisoner appeals does not have sufficient personal involvement in the alleged constitutional violation to support a claim against her for deliberate indifference to the prisoner's medical needs. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Unlike Plaintiff's counselors at Pinckneyville (see Count 5), the Complaint does not indicate that Benton had a level of awareness of Plaintiff's claims of denial of medical care that would support a deliberate indifference claim against her. Thus, the claim in **Count 9** against Benton shall be dismissed without prejudice.

The John Howard Association is a private organization which monitors the state prison system and is a resource and advocate for prisoners. It is not a division of the state government at all. As such, the John Howard Association is not a "state actor," and cannot be sued in a civil rights action. To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must show the deprivation of a constitutional right by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 49 (1988). A plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852-53 (7th Cir. 2003). Accordingly, the John Howard Association shall be dismissed from the action with prejudice.

To summarize, **Count 9** shall be dismissed without prejudice as against Rauner, Baldwin and Benton. The John Howard Association cannot be held liable for any claims in the Complaint, and shall be dismissed with prejudice as a Defendant.

## Dismissal of Count 10 – Grievances

For this claim, Plaintiff asserts that a number of Defendants have violated his civil rights by failing to respond to his grievances and by failing to operate an effective system within Pinckneyville and IDOC for addressing prisoner grievances. Plaintiff names Baldwin, Benton, Lashbrook, Jaimet, Love, Thompson, Hoch, McWilliams, Hill, Samolinski, Loos, Flatt, John Doe #2 Mailroom Supervisor, and the John Howard Association in connection with this claim. He invokes his First Amendment right to petition the government for redress. His allegations also suggest a Fourteenth Amendment due process claim. Under either theory, however, Plaintiff cannot sustain a § 1983 claim for a civil rights violation.

Prison officials' mishandling or failure to respond to individual grievances does not implicate any constitutional right. The same is true in the case of a grievance system that is flawed or ineffective. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures (or to establish effective grievance procedures) does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Of course, prisoners have a First Amendment right to petition the government for the redress of grievances, which ultimately may be exercised through access to the courts. *See Bounds v. Smith*, 430 U.S. 817 (1977). Plaintiff has brought this lawsuit, thus there has been no

denial of his rights to seek redress for his complaints of wrongdoing.

Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a Defendant raises a challenge to Plaintiff's ability to maintain a § 1983 suit over the substantive matters raised in the grievances. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Nonetheless, a Defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim.

For these reasons, **Count 10** shall be dismissed with prejudice. Defendants Baldwin, Benton, Hoch, Hill, Samolinski, Loos, and John Doe #2 Mailroom Supervisor shall be dismissed without prejudice.

## Pending Motion

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to United States Magistrate Judge Wilkerson for further consideration.

## Disposition

**COUNTS 6 and 10** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 9** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**RAUNER, BALDWIN, BENTON, HOCH, HILL, SAMOLINSKI, LOOS, JOHN DOE #1 (Wexford Traveling Medical Director), JOHN DOE #2 (Mail Room Supervisor),** and **JANE DOE (Med Tech)** are **DISMISSED** from this action without prejudice. The **JOHN HOWARD ASSOCIATION** is **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for **LASHBROOK, JAIMET, LOVE, THOMPSON, McWILLIAMS, FLATT, WEXFORD HEALTH SOURCE, INC., SHICKER, MEEKS,**

**BUTALID, RAO, ROSE, SMITH, LONG, RECTOR, LACRONE,** and **BROWN**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 27, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**